Document 1

Document 2

Document 3

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

NOTICE OF JUDGMENT
June 14, 2005

TO:        Andrew J. Savage III, Esq.
           Robert Hayden Bickerton, Esq.

           Judgment was entered this date in Case Number(s):    04-4182

           The Court's decision is enclosed.

PETITION FOR REHEARING (FRAP 40)
PETITION FOR REHEARING EN BANC (FRAP 35)

Filing     A petition must be received in the clerk's office within 14
Time       days after judgment to be timely. There are three exceptions
           to this rule:

           (1)  In all civil cases in which the United States or an agency
           or officer thereof is a party, any petition for rehearing must
           be received in the clerk's office within 45 days after entry of
           judgment.

           (2)  The Court may grant an extension of time or leave to file a
           petition for rehearing out of time if the party establishes that
           the delay resulted from the death or serious illness of counsel
           or a family member (or of a party or family member in pro se
           cases) or other circumstances wholly beyond the control of counsel
           or a party proceeding without counsel.

           (3)  Prisoner petitions are deemed filed when delivered to
           prison authorities.

           If a petition for rehearing en banc is to be filed, it must be
           filed at the same time and in the same document as the petition
           for rehearing and must be clearly identified in the title.

           Each case number to which the petition applies must be listed
           on the petition, even in companion or consolidated cases.
           Failure to list the individual case numbers on the petition
           will result in the unidentified cases proceeding to mandate
           even if a timely petition for rehearing has been filed in a
           companion or consolidated case.

           A timely filed petition for rehearing or petition for rehearing
           en banc will stay the mandate and toll the running of time for
           filing a petition for writ of certiorari.

Purpose    A petition should only be made to direct the Court's attention
           to one or more of the following situations:

           1. A material fact or law overlooked in the decision.
           2. A change in the law which occurred after the case was submitted
              and which was overlooked by the panel.
           3. The opinion is in conflict with a decision of the United States
              Supreme Court, this Court, or another court of appeals, and the
              conflict is not addressed in the opinion.
           4. The proceeding involves one or more questions of exceptional

importance.

Statement of Counsel   A petition shall contain an introduction stating that, in counsel's judgment, one or more of the situations exist as described in the above "Purpose" section. The points to be raised shall be succinctly listed in the statement.

Form   The 15 page limit allowed by the Rule shall be observed. The Court requires 4 copies of the petition (20 copies of a petition for rehearing en banc), and a copy of the Court's opinion must be attached to each copy of the petition.

### BILL OF COSTS (FRAP 39)

Filing Time   A party to whom costs are allowed, who desires taxation of costs, shall file a bill of costs on or before 06/28/05.

### MANDATE (FRAP 41)

Issuance Time   In original proceedings before this Court, there is no mandate. Unless the Court shortens or extends the time, in all other cases, the mandate issues 7 calendar days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay the issuance. If the petition or motion is denied, the mandate will issue 7 calendar days later. If a stay of mandate is sought, only the original of a motion need be filed.

Stay   A motion for stay of the issuance of the mandate shall not be granted simply upon request. Ordinarily the motion will be denied unless it would not be frivolous or filed merely for delay and would present a substantial question or otherwise set forth good or probable cause for a stay.

### CRIMINAL CASES (Plan in Implementation of the CJA)

Criminal   In criminal cases, counsel must inform the defendant in writing of the right to file a petition for writ of certiorari from an adverse decision of this Court. Counsel appointed under the Criminal Justice Act must file their vouchers within 60 days of entry of judgment, denial of a petition for rehearing, or the grant or denial of a petition for writ of certiorari, whichever is later.

### PETITION FOR WRIT OF CERTIORARI  (Sup.Ct.R. 13)

Filing Time   Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons. The petition must be filed in the United States Supreme Court within 90 days of this Court's entry of judgment. The time does not run from the issuance of the mandate. If a petition for rehearing is timely filed, the time runs from the denial of that petition. Content, fees, and number of copies of a petition for writ of certiorari are governed by the Rules of the United States Supreme Court.

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 04-4182**

————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TERRANCE L. SMALLS, a/k/a T,

Defendant - Appellant.

————————

Appeal from the United States District Court for the District of South Carolina, at Beaufort.  Sol Blatt, Jr., Senior District Judge.  (CR-98-322)

————————

Argued:  March 18, 2005                    Decided:  June 14, 2005

————————

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

————————

Vacated and remanded by unpublished per curiam opinion.

————————

**ARGUED:** Andrew J. Savage, III, SAVAGE & SAVAGE, Charleston, South Carolina, for Appellant.  Robert Hayden Bickerton, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Columbia, South Carolina, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In 1999, appellant Terrance L. Smalls pleaded guilty in the District of South Carolina to separate felony offenses of drug possession and conspiracy. Despite Smalls's plea agreement obligation to be "fully truthful and forthright" concerning the Government's investigation into illegal drug trafficking and other unlawful activities, Smalls failed to inform the authorities of a 1994 drug-related murder in which he had participated. The court sentenced Smalls to forty years of imprisonment after applying the murder cross-reference provided for in § 2D1.1(d)(1) of the United States Sentencing Guidelines. On appeal, Smalls urges, inter alia, that we vacate his sentence because the court erroneously considered his post-plea admissions about the murder, in contravention of the Fifth and Sixth Amendments, and otherwise based his sentence on judge-found facts, in violation of the Sixth Amendment. As explained below, we reject Smalls's contention on the sentencing court's consideration of his post-plea admissions. In light of United States v. Booker, 125 S. Ct. 738 (2005), and its progeny, however, we vacate his sentence and remand.

I.

Smalls was involved in a drug-trafficking organization that operated in the Burton area of Beaufort County, South Carolina, and whose members were known as the "Burton Boys." In

2

January 1998, a task force of local, State, and Federal law enforcement officers began an investigation into the Burton Boys, which revealed that Smalls had sold cocaine base ("crack") and cocaine that he received from various sources. On December 9, 1998, after completion of the investigation, a thirty-three count indictment was returned against twenty-eight defendants, including Smalls, for various drug-trafficking activities. Smalls was charged in three of those counts with: (1) conspiring to possess with intent to distribute cocaine and cocaine base, in contravention of 21 U.S.C. §§ 846 and 841(a)(1) ("Count 1"); (2) possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) ("Count 2"); and (3) possessing with intent to distribute cocaine, in contravention of 21 U.S.C. § 841(a)(1).

On March 16, 1999, Smalls and his lawyer entered into a "proffer" understanding with the Government, by which Smalls, <u>inter alia</u>, agreed to "be fully truthful and forthright" with the authorities, to assist in negotiations with the prosecution on a potential plea agreement. Later that month, pursuant to the proffer, Agents March and Purcell of the FBI twice interviewed Smalls — with the consent of his then-counsel, Joenathan Chaplin. The agents sought to confirm their suspicion that Smalls possessed information concerning (and had possibly participated in) the July 1994 drug-related murder of Audrey Stoeckle. During each interview Smalls requested to speak with his counsel, Mr. Chaplin, and each

3

time his request was granted.  In the second interview, on March 24, 1999, Smalls admitted being present at the Stoeckle murder and asserted that his co-defendant Benjamin Gibbs had killed Stoeckle. Two months later, on May 20, 1999, a formal plea agreement was entered into and Smalls pleaded guilty to Counts 1 and 2 of the indictment — the offenses of conspiracy and possession with intent to distribute crack cocaine.  As part of the plea agreement, Smalls admitted being "personally responsible for . . . at least 500 grams but less than 1.5 kilograms" of crack.[1]  On December 15, 1999, in compliance with the plea agreement, Smalls submitted to a polygraph examination.  Before the polygraph was administered, Smalls was advised of and waived his Miranda rights.  During the examination itself, Smalls denied shooting Stoeckle.  When Smalls was informed that he had failed the polygraph examination, he requested that the post-examination interview cease, and it was immediately terminated.

Because Smalls had failed the polygraph examination, the Government was unable to use him as a witness against Gibbs, who was being prosecuted for the murder of Stoeckle.  His inability to testify in turn prejudiced his eligibility for a downward departure

---

[1]  The plea agreement between the Government and Smalls also provided that, if Smalls failed to be "fully truthful and forthright at any stage," the attorneys for the Government could — at their sole election — "cause the obligations of the [Government] to become null and void."

4

for cooperation with the Government, under § 5K1.1 of the Sentencing Guidelines. In an attempt to get Smalls "back in the ball game," his lawyer, Mr. Chaplin, thereafter gave permission for FBI agents to re-interview Smalls. As a result, on January 26, 2000, Agents March and Purcell interviewed Smalls at the Dorchester County Jail in St. George, South Carolina June 1, 2005(the "Final Interview"). On that occasion, the agents informed Smalls that his polygraph examination had indicated deceptiveness, and they asked him to further explain what had happened the night of the Stoeckle shooting. Smalls then admitted that he had aimed a 9-millimeter pistol towards a ditch in which Stoeckle lay screaming, that he had fired three or four shots in her direction, and that she had made a "dying sound." Smalls never requested either the presence of his lawyer or that the interview be terminated.

The district court thereafter conducted a three-day sentencing hearing concerning Smalls, from February 11 through February 13, 2004.[2] At that hearing, Smalls contended that the FBI agents did not have permission from his attorney, Chaplin, to conduct the Final Interview, and therefore that any admissions he had made in the Interview were obtained in violation of his Sixth Amendment right to counsel. Chaplin testified in the sentencing

---

[2] On August 31, 1999, the probation officer completed Smalls's Presentence Investigation Report ("PSR"), which was subsequently revised and supplemented four times, incorporating objections by both the Government and Smalls. The final addendum to the PSR was filed on February 5, 2004.

hearing on that issue, and asserted that he could not remember whether he had agreed that the agents could re-interview Smalls. The district court, in ruling on the factual dispute, found that Chaplin had given permission for his client to be re-interviewed by the agents, observing that the only way Chaplin could have gotten Smalls "back in the ball game," i.e., to testify for the Government and thereby become eligible for a downward departure, was to authorize the FBI agents to re-interview him.

In determining Smalls's sentencing range, the court grouped the drug conspiracy and drug possession counts together. See USSG § 3D1.2(d) (2003). First, it found that, disregarding the plea agreement, Smalls had dealt at least 1.5 kilograms of crack, which resulted in a base offense level of 38. See id. § 2D1.1. Second, the court enhanced Smalls's offense level by two levels for possession of a dangerous weapon, increasing his offense level to 40. See id. § 2D1.1(b)(1). The court based this enhancement on the evidence related to the Stoeckle murder, as Smalls had not pleaded guilty to any facts related to possession of a firearm. Finally, the court found that Smalls was responsible for the murder of Stoeckle and applied the murder cross-reference. See § 2D1.1(d)(1) ("If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)."). In making its §

6

2D1.1(d)(1) ruling, the court concluded, "I'm convinced beyond a reasonable doubt that you participated in this murder and you shot this girl."

As a result of the court's application of the § 2D1.1(d)(1) murder cross-reference, Smalls's base offense level was 43 — notwithstanding the court's earlier calculations. After determining that his criminal history category was II, Smalls's guideline sentence was life in prison. However, the statutory maximum for each of the offenses to which Smalls had pleaded guilty was twenty years, under 21 U.S.C. § 841(b)(1)(C), thus limiting his maximum sentence to forty years. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").[3] As a result, the court sentenced Smalls to two consecutive terms of 240 months (twenty

---

[3] In his plea agreement Smalls had stipulated to a quantity of drugs which could have made him eligible for a life sentence under § 841(b)(1)(B)(ii)(II) of Title 21. Counts 1 and 2 of the indictment, however, alleged no drug quantities. Compare 21 U.S.C. § 841(b)(1)(B)(ii)(II) (authorizing life imprisonment for possession of 500 grams of cocaine mixture) with 21 U.S.C. § 841(b)(1)(C) (authorizing twenty-year maximum sentence for possession of cocaine mixture). Because the Government does not contest the court's conclusion that Smalls's maximum term of imprisonment was capped at forty years, we need not address the question of whether the drug quantities stipulated to in the plea agreement made Smalls eligible for a life sentence.

years) on each of the counts to "carry out . . . the Guideline

Range as near as possible, or the Guideline Range of life."

Smalls has filed a timely notice of appeal, and we

possess jurisdiction pursuant to 28 U.S.C. § 1291.[4]


II.

In reviewing a district court's sentencing determinations

under the Guidelines, we review findings of fact for clear error

and the court's application of the Guidelines de novo.  See United

States v. Savage, 390 F.3d 823, 832 (4th Cir. 2004).  When a timely

and sufficient objection to the erroneous application of a

sentencing provision has not been made, we are only empowered to

correct the sentencing error if it constitutes "plain error" under

Federal Rule of Criminal Procedure 52(b).  See Fed. R. Crim. P.

52(b) ("A plain error that affects substantial rights may be

considered even though it was not brought to the court's

attention."); United States v. Hughes, 401 F.3d 540, 547 (4th Cir.

2005).  With these principles in mind, we assess Smalls's

contentions on appeal.

---

[4] On January 24, 2005, Smalls filed in this Court a motion to remand for resentencing pursuant to United States v. Booker, 125 S. Ct. 738 (2005).  On February 14, 2005, Smalls filed a supplemental brief with our permission, contending that his sentence violated the Sixth Amendment under Booker.

III.

First of all, Smalls maintains that the sentencing court erred in considering the admissions that he made to the FBI agents in the Final Interview — that he pointed a pistol in the direction of Stoeckle and that, after he fired three or four shots in her direction, she made a "dying sound" — because those admissions were obtained from him in violation of the Fifth and Sixth Amendments. Second, Smalls contends that his sentence contravened his Sixth Amendment right to a jury trial because it was based on judge-found facts, in violation of Booker.

A.

1.

In challenging the court's consideration of the admissions made by him in the Final Interview, Smalls makes a two-pronged constitutional assertion. First, he maintains that the statements were obtained in contravention of his Fifth Amendment privilege against self-incrimination. See U.S. Const. amend. V ("No person shall be . . . compelled in any criminal case to be a witness against himself . . . ."); Missouri v. Seibert, 124 S. Ct. 2601, 2608 (2004) (reaffirming that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.") (internal quotation marks omitted). Specifically, Smalls contends that after he asserted his desire to

9

terminate the post-polygraph interview, the Government was mandated (but failed) to advise him of his Miranda rights at the outset of the Final Interview.  See Michigan v. Mosely, 423 U.S. 96, 104 (1975) (holding that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his right to cut off questioning was scrupulously honored") (internal quotation marks omitted).

Unfortunately for Smalls, he waived his privilege against self-incrimination by entering into the plea agreement with the Government, in which he specifically agreed to "be fully truthful and forthright."  As we observed in United States v. Scruggs, a number of courts have concluded that "'a plea agreement that states in general terms the defendant's obligation to cooperate with the government can constitute a waiver of the defendant's Fifth Amendment privilege against self-incrimination.'"  356 F.3d 539, 546 (4th Cir. 2004) (finding defendant waived Fifth Amendment privileges by entering plea agreement) (quoting United States v. Bad Wound, 203 F.3d 1072, 1075 (8th Cir. 2000)).  Smalls seeks to distinguish the Scruggs decision, however, on the basis that Scruggs had explicitly waived all "claim[s] under the United States Constitution," whereas Smalls agreed only to cooperate and be truthful, without explicitly waiving his constitutional rights.

Smalls's contention on this point is unavailing, however, because he is asserting a distinction in the two cases that is

10

immaterial.  In examining this point, we are bound by our precedent in <u>United States v. Wise</u>, that a defendant has "waived his fifth amendment privilege by entering into the plea agreement requiring him to cooperate with the government."  603 F.2d 1101, 1104 (4th Cir. 1979); <u>see also</u> <u>United States v. Resto</u>, 74 F.3d 22, 27 (2d Cir. 1996) (observing that defendant "entered into the agreement voluntarily, electing to give up his [Fifth Amendment] privilege (to a limited extent) in exchange for the benefits of the agreement"); <u>United States v. Lawrence</u>, 918 F.2d 68, 72 (8th Cir. 1990) ("Any Fifth Amendment right not to reveal the full extent of his criminal activity was waived when [the defendant] entered the plea agreement, as well as each time thereafter when he volunteered different information.").  By entering into his plea agreement with the Government and thereby agreeing be fully truthful and forthright, Smalls necessarily waived his Fifth Amendment privilege against self-incrimination regarding the Stoeckle murder.  As a result, the sentencing court was entitled to take into account Smalls's post-plea admissions concerning the Stoeckle murder without contravening the Fifth Amendment.

2.

Second, Smalls maintains that his post-plea admissions were obtained in violation of his Sixth Amendment right to counsel. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to the have the Assistance

11

of Counsel for his defence." U.S. Const. amend. VI. The right to counsel attaches after "adversary judicial proceedings" have been initiated against the defendant "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" United States v. Gouveia, 467 U.S. 180, 187-88 (1984) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)). Thus, Smalls's Sixth Amendment right to counsel had attached when he made the statements at issue.[5]

A defendant whose Sixth Amendment right to counsel has attached is entitled to waive that right in connection with a police-initiated interrogation. Patterson v. Illinois, 487 U.S. 285, 292-93 (1988); see also Michigan v. Harvey, 494 U.S. 344, 352 (1990) ("[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney."). And, "in at least some cases[,] waiver can be clearly

---

[5] The Sixth Amendment — unlike the Fifth Amendment — is offense-specific, in that its invocation as to a pending offense would not preclude police from interrogating a suspect about an unrelated offense. See Texas v. Cobb, 532 U.S. 162, 173-74 (2001) (holding that Sixth Amendment right to counsel encompasses only offenses that "would be considered same offense under the Blockburger test") (citing Blockburger v. United States, 284 U.S. 299, 304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not")). In this appeal, however, the Government makes no contention that the Stoeckle murder was a separate offense, under Blockburger, from the drug offenses with which Smalls was charged.

inferred from the actions and words of the person interrogated." North Carolina v. Butler, 441 U.S. 369, 373 (1979). In assessing whether there has been a knowing, intelligent, and voluntary waiver of the right to counsel, a court is obliged to weigh "the particular facts and circumstances surrounding th[e] case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464 (1938), overruled in part on other grounds by Edwards v. Arizona, 451 U.S. 477 (1981).

The particular facts and circumstances surrounding this case undermine Smalls's contention with respect to his right to counsel issue at the Final Interview. First of all, Smalls, assisted by his counsel, had entered into a plea agreement with the prosecutor, by which he agreed to "be fully truthful and forthright" with the Government regarding his "unlawful activities." Second, less than six weeks before the Final Interview, Smalls's Miranda rights had been fully explained to him and he had waived them. Indeed, the record shows that those constitutional rights had been explained to him on multiple occasions. When the Final Interview was conducted, Smalls was a twenty-six year old adult possessing an eleventh grade education, and he had personal experience in the state criminal justice system as a result of various criminal proceedings instituted against him. Third, during the Government's two March 1999 interviews of Smalls, he had asserted a desire to speak with his counsel, and he had

13

requested that his post-polygraph interview be terminated, demonstrating his knowledge of his right to have his counsel present. Fourth, his own lawyer had initiated the Final Interview by speaking directly with the prosecutor, in an effort to get Smalls "back in the ball game," <u>i.e.</u>, testifying for the Government and thereby potentially eligible for a downward departure. Finally, Smalls never expressed any desire to have his counsel present at the Final Interview. In these circumstances, we are constrained to conclude that Smalls never asserted his right to counsel with respect to that Interview. <u>See</u> <u>Butler</u>, 441 U.S. at 373 (holding implied waiver of Sixth Amendment rights permissible). As a result, we also reject Smalls's contention that the statements he made in the Final Interview were obtained in contravention of his right to counsel.

B.

We next assess Smalls's contention that his sentence was imposed in violation of the Sixth Amendment's jury trial guarantee, in light of <u>Booker</u> and its progeny. Because Smalls raised this Sixth Amendment challenge for the first time on appeal, we review his contention for plain error only, applying the principles of <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993). <u>See</u> <u>United States v. Hughes</u>, 401 F.3d 540, 547 (4th Cir. 2005). The plain error mandate of Olano is satisfied if: (1) there was error; (2) it was plain; and (3) it affected the defendant's substantial rights.

14

507 U.S. at 732.  If these conditions are met, we may then exercise our discretion to notice the error, but only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."  Id.  (internal quotation marks and alteration omitted).

Under Olano's first prong, the forty-year prison term which the sentencing court imposed on Smalls was erroneous.  See Booker, 125 S. Ct. at 755-56 (holding Sixth Amendment contravened when sentencing court, acting pursuant to Guidelines, imposes sentence greater than maximum authorized by facts found by jury alone).  Under the then-mandatory Guidelines regime, the facts to which Smalls pleaded guilty supported an offense level of 38, resulting in a sentencing range of 262 to 327 months.  The court's application of the § 2D1.1(d)(1) murder cross-reference — predicated on facts related to Stoeckle's murder to which Smalls did not plead guilty — increased his offense level to 43, resulting in a guideline sentence of life in prison.  Under Booker, the sentencing court erred in relying on its own fact-finding to impose a sentence on Counts 1 and 2 in excess of 327 months.  See Hughes, 401 F.3d at 547 (recognizing that imposition of sentence, "in part based on facts found by the judge, . . . constituted error").

Second, although Smalls's Sixth Amendment contention was foreclosed by our precedent at the time of his sentencing, Booker

has "abrogated our previously settled law," rendering plain the error made by the sentencing court. Hughes, 401 F.3d at 547-48. And third, the sentencing error made by the court was prejudicial, in that Smalls's 480-month sentence was 153 months longer than the maximum of 327 months authorized by the facts to which he pleaded guilty. See id. at 548-49.

Finally, we are obliged to notice the plain error in Smalls's sentence. See Hughes, 401 F.3d at 555-56 (exercising discretion to notice Booker error). As a result of this error, Smalls was sentenced to a term of imprisonment greater than that authorized by the facts to which he had pleaded guilty, seriously affecting "the fairness, integrity or public reputation of [the] judicial proceedings." Olano, 507 U.S. at 732 (internal quotation marks omitted); see also Hughes, 401 F.3d at 555. And, we have no indication as to what sentence the court would have imposed absent the Sixth Amendment error. We are thus constrained to vacate Smalls's sentence and remand for resentencing consistent with Booker and its progeny.[6]

---

[6] Smalls also contends that the sentencing court erroneously applied the murder cross-reference under § 2D1.1(d)(1) of the Guidelines, in that (1) there was insufficient evidence that he murdered Stoeckle, (2) there was insufficient evidence that the murder is in the first degree, and (3) application of the murder cross-reference violated his Tenth Amendment rights. In these circumstances, these contentions are patently without merit and need not be further discussed.

16

IV.

Pursuant to the foregoing, we vacate Smalls's sentence and remand for resentencing.[7]

<u>VACATED AND REMANDED</u>

---

[7] Smalls's motion to remand this case for resentencing, <u>see infra</u> note 4, filed in this Court pursuant to <u>Booker</u> after his appeal was initiated, is rendered moot by our disposition of the appeal.

17

JUDGMENT

FILED: June 14, 2005

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

No. 04-4182
CR-98-322

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

TERRANCE L. SMALLS, a/k/a T

Defendant - Appellant

--------------------
Appeal from the United States District Court for the
District of South Carolina at Beaufort
--------------------

In accordance with the written opinion of this Court filed this day, the Court vacates the judgment of the District Court.  This case is remanded to the District Court for further proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate.  The judgment will take effect upon issuance of the mandate.

/s/ Patricia S. Connor
_____
CLERK